GULF, MOBILE & OHIO RAILROAD COMPANY *v.* WITHERS

No. 42691 June 3, 1963 154 So. 2d 157

124

*Wilbourn, Lord & Williams, J. V. Gipson,* Meridian; *Sanford & Alford,* Philadelphia, for appellant.

*Miller & Adams,* Meridian; *Clayton R. Lewis,* Philadelphia, for appellee.

ETHRIDGE, J.

Niles H. Withers, appellee, brought this action in the Circuit Court of Lauderdale County against appellant, the Gulf, Mobile & Ohio Railroad Company, seeking damages for personal injuries resulting from his automobile running into a parked flat car. The accident occurred on June 23, 1958, but action was not filed until 1962. The jury returned a verdict for Withers. However, the resulting judgment for him must be reversed because of material errors in an instruction on sudden emergency.

Withers, a salesman, lived in Philadelphia, Mississippi. Beacon Street (State Highways 15 and 16) crossed the main line and four side tracks on the right of way of the railroad in that city. Beacon Street runs east and west, the railroad tracks north and south, with the main line in the middle, and two tracks on each side of the main line. Beacon Street is a heavily traveled thoroughfare, paved with asphalt 36 feet wide. The easternmost track of the railroad was called the team track. The depot was located about 79 feet south of the paved asphalt area of Beacon Street.

The jury could find from plaintiff's evidence the following: On Saturday before the accident on Monday, the railroad's crew placed four unloaded flat cars on the team track. The car next to and south of Beacon Street was located so that it covered an old sidewalk, 12 feet in width, and concealed with gravel placed on it by the railroad, and either protruded about 12 inches over the asphalt portion of the street or was immediately against it. On that Monday, Withers had been in the immediate vicinity on two occasions, and was aware of the parked flat cars. Around 1:30 p.m. it was bright with good visibility. Withers drove east on Beacon Street as he approached the railroad crossing. He was going between 20 to 25 miles per hour, and the traffic was heavy. He met another car coming toward him, traveling in a westerly direction. When he was 15-20 feet west of the team track, a third car, attempting to pass the oncoming car, pulled into the south lane (in which Withers was driving east) and, in order to avoid an imminent collision, Withers turned his car sharply to the right. He ran into the left front wheel of the flat car, which had been parked by defendant across the sidewalk and slightly over the asphalt pavement. He was severely injured.

On the other hand, the railroad's evidence tended to show that the rail car was somewhat south of the asphalt.

The sidewalk, if it had ever existed, had long since been abandoned and unused as such. The tire tracks of Withers' car left the asphalt about 84 feet west of the team track, and continued east off of the asphalt in almost a straight line for about 80 feet, before arriving at the point of impact against the left front wheel of the flat car. The railroad's evidence indicated that Withers had a strip of asphalt pavement 15 to 16 feet in width, in which to drive between the flat car and the other oncoming automobile, he had ample room to avoid the oncoming vehicle without running into the rail car, and he did not apply his brakes or attempt to stop his automobile, but simply ran into the railroad car.

██ █ Under these circumstances it was an issue of fact for the jury as to whether the railroad's flat car was parked over the asphalt pavement of Beacon Street and over a sidewalk which was part of the street and of the right of way for pedestrians. Appellant was not entitled to a peremptory instruction. In determining that question, the evidence must be treated as proving every fact favorable to plaintiff's case which is established either directly or by reasonable inference. Luther McGill, Inc. v. Clark, 240 Miss. 509, 146 So. 2d 338 (1962).

██ █ The evidence was in conflict as to location of the rail car with reference to the asphalt pavement and the concrete sidewalk. Its position, whether it endangered traffic, and whether its position, if negligent, contributed to plaintiff's injuries, were questions of fact for the jury. The evidence was conflicting.

Appellant argues that Withers' negligence was the sole proximate cause of the collision. There again the evidence was in dispute. Plaintiff's evidence tended to show that the oncoming car (on his side of the road) appeared when he was only 15 or 20 feet from it, and he had to turn quickly in order to avoid a head-on crash. Defendant's evidence indicated Withers turned off the asphalt some 80 feet west of the team track,

and proceeded straight into the side of the rail car. This conflict reflects the key issue in this lawsuit: Withers' assertion that he turned into the rail car because of a sudden emergency confronting him, the oncoming car pulling out into his lane of traffic only a short distance away. If there had been no oncoming car, and Withers had simply turned into the rail car, his own negligence would have been the sole cause of his injuries. On the other hand, if there was a sudden emergency, and Withers acted with reasonable care before and after the emergency occurred, then the railroad's negligence, if any, in locating the rail car could be a contributing cause of his injuries. Hence the sudden emergency is the key to plaintiff's case. If it occurred, the jury on disputed facts would be warranted in finding for him. If it did not occur, the sole proximate cause of his injuries was his own negligence.

In this situation, Withers obtained the following instruction (No. 11) on sudden emergency:

"The Court instructs the jury for the Plaintiff that if you believe from a preponderance of the evidence that the Plaintiff was suddenly confronted with a sudden emergency not of his own making and was by reason thereof placed in a position of peril to himself without sufficient time in which to determine with certainty the best thing to do, he is not held to the same accuracy of judgment as is required of him under ordinary circumstances and in this instance if you believe from the preponderance of the evidence that the Plaintiff was immediately prior to the collision confronted with a sudden emergency which he did not create and was by reason thereof placed in a position of peril to himself, then in weighing the evidence and determining whether or not Plaintiff was guilty of negligence at the time of the collision you may take into consideration all the facts and circumstances as shown by a

preponderance of the evidence and the situation with which the Plaintiff was confronted.''

After careful consideration of the entire record and all of the instructions, we have concluded that the granting of this instruction in this form on sudden emergency was reversible error. It did not define ''sudden emergency'', and it did not state that, after the sudden emergency arose, the plaintiff exercised such care as a reasonably prudent and capable driver would use under the circumstances. The same instruction in almost identical language was condemned and held to be reversible error in Moore v. Taggart, 233 Miss. 389, 102 So. 2d 333 (1958). Further, the recent case of Crump v. Brown, 151 So. 2d 822 (Miss. 1963), involved a substantially similar instruction with the same defects, and the court held it was reversible error. *Crump* further said that the giving of general instructions on negligence did not cure the defect in the sudden emergency instruction.

Jones v. Dixie Greyhound Lines, 211 Miss. 34, 50 So. 2d 902 (1951), a leading case, held that a sudden emergency instruction was reversible error which failed to state that the driver must have used due care to avoid meeting or creating the emergency; that other related instructions did not cure this omission; and this factor of care before the emergency arose was ''a condition precedent to use of this standard.'' Moreover, such an instruction, invoking the doctrine of sudden emergency, should define the emergency, and further state that, after it arose, the person asserting it exercised due care. Callaway v. Haddad, 226 Miss. 177, 83 So. 2d 825 (1955) ; see also Pullin v. Nabors, 240 Miss. 864, 128 So. 2d 117 (1961).

In summary, a person who invokes the doctrine of a sudden emergency should incorporate in an instruction on that point three essential elements: (1) He must have used reasonable care before the emergency

arose, and it was not one of his own creation or making; (2) define and describe briefly the sudden emergency, stating the facts which, the jury might decide, warranted a finding of sudden emergency; and (3) after the sudden emergency arose, he must exercise such care as a reasonably prudent and careful person (capable driver) would use under the unusual circumstances.

 █ Plaintiff's Instruction No. 11 omits the last two of these essentials. Since a sudden emergency is the basis to Withers' entire case, upon which his assertion of damages against the railroad depends (otherwise the sole proximate cause of the collision would be his own negligence), this erroneous instruction was necessarily, probably prejudicial. It confused the law and facts on this issue, and probably misled the jury. Hence we hold that the giving of it was reversible error.

We comment only briefly on the other four instructions criticized by appellant: Plaintiff's instruction No. 8 should have made the test that of a reasonably prudent man, rather than what plaintiff "reasonably believed." No. 6 omitted the phrase "from a preponderance of the evidence". No. 3 referred to defendant leaving its flat car "at the location where same was left", rather than more specifically stating its position. There was no error in introduction of the city map through the witness Webb. Evidence tending to impeach defendant's witness Cooper was properly admitted. However, the trial court erred in excluding certified copies of deeds to the railroad's property, which it is claimed pertain to land in the vicinity of the accident, for whatever they would be worth.

Reversed and remanded.

*Lee, P. J., and Kyle, Arrington and Rodgers, JJ.,* concur.