IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2008

Charles R. Fulbruge III
Clerk

No. 08-60571
Summary Calendar

SHARON MCNULTY

Plaintiff-Appellant

V.

J. C. PENNEY COMPANY; J. C. PENNEY CORPORATION; J. C. PENNEY
# 2168; ERIC GREENE; JOHN DOE DEFENDANTS

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:07-CV-68

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Appellant Sharon McNulty challenges the district court's May 23, 2008 grant of summary judgment. McNulty was arrested at a J.C. Penney store in Ridgeland, Mississippi after she was accused of shoplifting on March 25, 2005. McNulty was subsequently found not guilty of the offense and brought a lawsuit, later removed to federal court, that accused J.C. Penney and its employee, Eric

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Greene, of: (1) malicious prosecution; (2) false imprisonment; (3) assault and battery; (4) negligence; (5) various intentional torts; (6) defamation; (7) intentional infliction of emotional distress; (8) invasion of her right to privacy; (9) discrimination on the basis of disability; (10) race-based discrimination; (11) discrimination on the basis of religion; and (12) gender-based discrimination.

On March 25, 2008, the district court dismissed all claims asserting intentional torts under Federal Rule of Civil Procedure 12(b)(6), holding that Mississippi's one-year statute of limitations for such claims, MISS. CODE. ANN. § 15-1-35 (1983), had run. Accordingly, the court disposed of McNulty's claims for assault, battery, intentional defamatory and slanderous statements, intentional infliction of emotional distress, and unlawful and malicious detainment. McNulty does not challenge this order.

On May 23, 2008, the district court granted summary judgment on McNulty's remaining claims, holding that the undisputed evidence established that probable cause existed for McNulty's arrest, and, accordingly, a claim for malicious prosecution was barred. The district court further stated, without elaboration, that, "Plaintiff's remaining claims, including those for negligence, all without any legal basis, will also be dismissed." McNulty challenges this order, claiming that genuine issues of material fact exist regarding her claims for malicious prosecution, negligence, disability discrimination, racial discrimination, and various Fourth Amendment violations. Because no genuine issues of fact exist regarding McNulty's claims, we affirm the district court's order.[1]

---

[1] McNulty does not challenge the remainder of the district court's holding, therefore, we do not examine these findings. See, e.g., United States v. Fagan, 821 F.2d 1002, 1015 n. 9 (5th Cir. 1987) ("We do not search the record for unassigned error, and contentions not raised on appeal are deemed waived."). McNulty raises as an issue on appeal purported claims under the Fourth Amendment. However, the Amended Complaint does not contain any allegations of unlawful search, seizure, or arrest under the Fourth Amendment, and McNulty does not adequately brief this issue on appeal. Accordingly, it is waived. See, e.g., Yohey v. Collins, 985

## I. Background

Sharon McNulty is an African-American female who states that she is disabled.  On March 25, 2005, McNulty was shopping in the Northpark Mall in Ridgeland, Mississippi, and entered the J.C. Penney department store. McNulty had previously shopped at McRae's and Dillard's department stores in the same mall, and entered the J.C. Penney with a McRae's cart that already contained two large shopping bags.  McNulty asserts that she was using this cart for support because of her physical ailments.

During her visit to the store, McNulty aroused the suspicion of an associate who reported that McNulty had repeatedly entered the fitting room with merchandise.  Eric Greene, an off-duty police officer employed as a security guard by J.C. Penney, viewed a security camera feed and observed McNulty select a number of items and place them in her cart.  McNulty was videotaped shopping for approximately thirty minutes.  During this time, she repeatedly gathered items from the shelves and put them on top of the bags in the cart that she already had from another store.  She proceeded to purchase clothing at a merchandise counter. McNulty paid for certain items of clothing, but a brassiere for which she had not paid remained in her cart.[2]  The videotape appears to show the item in plain view attached to the front of the shopping cart as McNulty shopped and purchased the other clothing.  Greene's statement indicated that McNulty acted suspiciously and then exited the store.[3]  She was stopped,

---

F.2d 222, 224-25 (5th Cir. 1993) (issues and arguments not briefed adequately are waived).

[2] According to the affidavit of Greene, McNulty bought a suit, two pair of panty hose, one brassiere, and a pair of panties, and was accused of shoplifting one bra, worth approximately $30.

[3] In her brief, McNulty contends that whether or not she left the store is a disputed fact question.  However, Greene affirmatively stated that McNulty "proceeded to exit the store via the upper level mall entrance."  McNulty's summary judgment evidence does not refute this statement.  Instead, McNulty's deposition states only that she is not sure whether she exited the store, because she did not hear a security buzzer sound.

escorted into a security office, and detained until a uniformed police officer arrived. McNulty became very upset during her detention, and claims that she developed a number of ailments, including temporary, stress-related blindness, as a result of her detention and subsequent arrest. The uniformed officer arrested McNulty for the state offense of shoplifting an item worth less than $500. McNulty was found not guilty of the offense on December 20, 2005.

McNulty brought the instant case in Mississippi state court, claiming that the store's actions were motivated by racial, religious, and gender bias, and that Greene and J.C. Penney committed malicious prosecution, false imprisonment, assault and battery, negligence, various intentional torts, defamation, intentional infliction of emotional distress, and invasion of her right to privacy.[4] McNulty urges that her possession of the lingerie was inadvertent, and that the item had simply become latched onto her cart without her knowledge because the store was not compliant with the Americans With Disabilities Act, 42 U.S.C. § 12182(a) (1990). On appeal, McNulty challenges the district court's grant of summary judgment as to her claims for malicious prosecution, negligence, racial and disability discrimination, and various Fourth Amendment violations.

## II.      Analysis[5]

### A.      Malicious Prosecution

To prevail on a claim for malicious prosecution,[6] a plaintiff must prove by a preponderance of evidence: (1) The institution of a proceeding; (2) by, or at the insistence of the defendant; (3) the termination of such proceedings in the

---

[4] McNulty contended that the store's security guards improperly focused the video cameras on her chest and buttocks, a violation of her right to privacy.

[5] We consider the grant of summary judgment de novo, drawing all inferences in the non-movant's favor. Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 349 (5th Cir. 2001).

[6] Appellee also contends that it is entitled to summary judgment on the malicious prosecution claim because McNulty did not file suit in the proper county within the limitations period for this claim. Because we affirm on another ground, we do not reach this question.

plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; (6) the suffering of injury or damage as a result of the prosecution. McClinton v. Delta Pride Catfish, Inc., 792 So.2d 968, 973 (Miss. 2001) (quoting Roussel v. Robbins, 688 So.2d 714, 721 (Miss. 1996)). A plaintiff must prove each element, or her claim for malicious prosecution fails. Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 72 (Miss. Ct. App. 2005); see also Van v. Grand Casinos of Miss., Inc., 767 So.2d 1014, 1019-20 (Miss. 2000) ("The tort of malicious prosecution must fail where a party has probable cause to institute an action.").

> In general, if the evidence is uncontroverted, the question of reasonable or probable cause is one of law for the court. If the evidence conflicts, the question of probable cause is a mixed question of law and fact; in that case, the question of the existence of the circumstances relied on as establishing probable cause is one of fact for the jury, under proper instructions from the court, while the question whether the existence of such circumstances would amount to probable cause is a question of law for the court.

Sw. Drug Stores of Miss., Inc. v. Garner, 195 So.2d 837, 841 (Miss. 1967). The Mississippi Supreme Court has explained that, for malicious prosecution, "[p]robable cause is determined from the facts apparent to the observer when the prosecution is initiated. In order to find probable cause there must be a concurrence of (1) an honest belief in the guilt of the person accused and (2) reasonable grounds for such belief. One is as essential as the other." Benjamin v. Hooper Elec. Supply Co., 568 So.2d 1182, 1190 (Miss. 1990) (citations omitted); see also Tebo v. Tebo, No. 07-60659, 2008 WL 4985205, at *5-*9 (5th Cir. Nov. 25, 2008) (explaining probable cause under Mississippi law).

In this case, the district court granted summary judgment because it found that probable cause existed for McNulty's arrest, barring recovery for malicious prosecution. The district court here explained:

> The undisputed facts show that on March 25, 2005, defendant Greene observed McNulty leaving the J.C. Penny Store in Northpark Mall located in the City of Ridgeland, Madison County, Mississippi, without lawfully paying for an undergarment. Earlier, Greene had observed her in the store acting in a suspicious manner. Once plaintiff left the store and once Greene stopped her, he found in her basket an undergarment for which plaintiff had not paid. Plaintiff admits that the undergarment was in her basket. She admits that the undergarment had not been purchased by her. She acknowledges that she had left the store. Given these circumstances, Greene clearly had probable cause under MISS.CODE ANN. § 97-23-93 to apprehend and detain McNulty for shoplifting.

McNulty v. J.C. Penny Co., No. 3:07-CV-68, 2008 WL 2201472, at *2 (S.D. Miss. May 23, 2008).[7] We have reviewed the summary judgment evidence, and we agree. Accordingly, summary judgment was proper on this claim.

B.    Negligence

McNulty's amended complaint raises allegations of negligence in her detention, arrest, and prosecution, and negligence in failing to implement a reasonable shoplifting policy, provide adequate training, provide adequate supervision, and take affirmative steps to avoid the wrongdoing purportedly committed against McNulty. She claims that the defendants failed to exercise reasonable care in controlling the conduct of J.C. Penney employees (including Greene), and that they negligently made defamatory and slanderous statements that McNulty had shoplifted. In the absence of applicable statutes, the rules of common law negligence apply in Mississippi. Foradori v. Harris, 523 F.3d 477, 486 (5th Cir. 2008).

---

[7] The pertinent section of the Mississippi shoplifting statute states: "The requisite intention to convert merchandise without paying the merchant's stated price for the merchandise is presumed, and shall be prima facie evidence thereof, when such person, . . . willfully: . . . (b) Removes or causes the removal of unpurchased merchandise from a store . . . ." MISS.CODE ANN. § 97-23-93(2)(b). Thus, as the district court found, McNulty's action of leaving the store with an item she did not pay for was prima facie evidence of intent to steal such that Greene had probable cause to stop, detain, and refer her to the authorities.

> Accordingly, Mississippi has long imposed on every person who undertakes an action a duty of reasonable care to protect against causing injury to others, see Dr. Pepper Bottling Co. of Miss. v. Bruner, 245 Miss. 276, 148 So.2d 199, 201 (1962), and while this duty requires that precautions be taken only against foreseeable risks, "in satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable; rather, it is enough to show that the plaintiff's injuries and damages fall within a particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence." Glover ex rel. Glover v. Jackson State Univ., 968 So.2d 1267, 1278 (Miss. 2007) (citing City of Jackson v. Estate of Stewart ex rel. Womack, 908 So.2d 703, 715 (Miss. 2005) and Gulledge v. Shaw, 880 So.2d 288, 293 (Miss. 2004)).

Id. Mississippi courts require an owner to maintain a reasonably safe environment, including taking reasonable precautions to guard against the risk of assaults by employees and third parties on premises. Id. Mississippi law also imposes a concomitant liability if an individual is negligent or reckless in (1) giving improper or ambiguous orders or in failing to make proper regulations; (2) in the employment of improper persons in work involving risk or harm to others; (3) in the supervision of the activity; or (4) in permitting, or failing to prevent, negligent or other tortuous conduct by persons upon premises under his control. Id. at 486-87 (citing Tillman ex rel. Migues v. Singletary, 865 So.2d 350, 353 (Miss. 2003)).

Given the summary judgment evidence discussed above, no material questions of fact exist as to whether J.C. Penney and its employees failed to abide by their duty of care in their investigation and detention of McNulty. The summary judgment evidence establishes that McNulty exited the store with an item that she did not purchase, she was stopped and detained, and a uniformed officer was called. Mississippi law permits as much. See Benjamin, 568 So.2d at 1187 (recognizing that "a citizen has a privilege to start the criminal law into action by complaints to the proper officials so long as one acts either in good

faith, i.e, for a legitimate purpose, or with reasonable grounds to believe that the person proceeded against may be guilty of the offense charged."). Therefore, there was no breach of duty, and summary judgment was appropriate for McNulty's negligence claims.

C.      Disability Discrimination

McNulty also claims that the district court erred in dismissing her claims under Title III of the Americans with Disabilities Act. She contends that the merchandise at J.C. Penney was inaccessible to her because she required the cart as an aide, the narrowness of the aisles caused the lingerie to become caught on her cart, and that unnamed employees of the store failed (due to her disability) to inform her that the item had become entangled on her cart.

However, the uncontroverted evidence is that McNulty brought in a cart from another establishment, and that she was able to use the cart to shop for a number of items which she tried on and eventually purchased. The security videotape submitted as part of the summary judgment evidence shows McNulty shopping for nearly thirty minutes, freely traversing the aisles of the store and selecting items of clothing. McNulty has failed to point to any facts showing that she was denied the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" in her dealings with J.C. Penney. See 42 U.S.C. § 12182(a). McNulty has not brought forward any facts showing that either the actions or policies of J.C. Penney or its employees denied McNulty access to the goods or services or the store. Nor has she pointed to any facts showing interference with her "equal enjoyment of the goods and services that the place of public accommodation offers." McNeil v. Time Ins. Co., 205 F.3d 179, 186 (5th Cir. 2000). Accordingly, no genuine issue of fact remains as to McNulty's claims under federal disability law, and summary judgment was warranted.

D.    Racial Discrimination[8]

McNulty contends that the district court erred by granting summary judgment on her claim for racial discrimination. To establish a claim for discrimination under 42 U.S.C. § 1981 (1991), "a plaintiff must allege facts in support of the following elements: (1) that the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Green v. State Bar of Tex., 27 F.3d 1083, 1086 (5th Cir. 1994). At issue here is McNulty's ability "to make and enforce contracts" on nondiscriminatory terms. 42 U.S.C. § 1981(a). We elaborated on the standard to be applied to a section 1981 claim brought against a retail merchant in Morris v. Dillard Dept. Stores, Inc., 277 F.3d 743, 752 (5th Cir. 2001). There, a plaintiff sued a department store under section 1981, alleging that the store interfered with her right to make or enforce a contract because of her race after she was banned from the store following a shoplifting arrest. Id. We held that a plaintiff "must offer evidence of some tangible attempt to contract . . . which could give rise to a contractual duty between her and the merchant, and which was in some way thwarted." Id. A plaintiff must establish the loss of an actual, not speculative or prospective, contract interest. Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997) (denying recovery under § 1981 to a plaintiff who "failed to present any evidence that [the defendant] did in fact interfere with the contract").

Here, McNulty claims that the actions of J.C. Penney and its employees – specifically their stop and search of her – were racially motivated and violated § 1981. However, her claim fails, because she successfully completed the

---

[8] McNulty does not appeal the district court's grant of summary judgment regarding her claims for gender or religious discrimination, or retaliation. Accordingly, we do not consider them. United Paperworkers Int'l Union v. Champion Int'l Corp., 908 F.2d 1252, 1255 (5th Cir. 1990).

purchase transaction. Arguello v. Conoco, Inc., 330 F.3d 355, 359 (5th Cir. 2003). Having completed her purchase, no claim under § 1981 lies. Id. at 359-60. In any case, McNulty has set forth no summary judgment evidence to suggest that J.C. Penney's actions were motivated by race: she was observed exiting the store with an item she had not purchased, and she was questioned and detained.[9] Accordingly, summary judgment was appropriate as to her claims under 42 U.S.C. § 1981.

III.    Conclusion

Because no genuine issues of material fact exist regarding McNulty's claims, we AFFIRM the district court's grant of summary judgment.

---

[9] McNulty's only contentions regarding race are that she is an African-American woman,  the person who apprehended her leaving the store (Eric Greene) was an African-American male, and  that the police officer who was called to the scene (and who, she claims, did not make an adequate investigation) was "white."  She stated that the latter was a "very nice man."  She also states that the only people under surveillance that day were African-Americans, but she offers no summary judgment evidence to that effect.  She also offers no summary judgment evidence that J.C. Penney had a policy of only putting African-Americans under surveillance or a pattern of conducting surveillance or arresting for shoplifting only African-American patrons.